We'll now proceed to the last case on this morning's oral argument calendar, which is Nacarino v. Kashi Company. Good morning, Your Honors. I'd like to reserve seven minutes of my time for rebuttal, if I can. May it please the Court, my name is Matt McCrary on behalf of the plaintiffs in this case. Defendants use protein sources in their products that are only half digestible by human beings. The other half simply degrades into waste in the human body. So the question in this case is whether FDA regulations, in light of those facts, nevertheless authorize the defendants to use protein quantity claims as a basis to advertise these products, i.e., to encourage consumers to buy the products because they have 16 grams of protein quantity, even though reasonable consumers have no idea that eight out of those, for example, 16 grams, are completely useless nutritionally, health-speaking perspective. And the answer to that question is no. Because the federal regulations, the only regulation in Section 101.13 or Subpart D, the only locations in the regulation that can authorize nutrient content claims, authorize quantitative advertising claims only if they are not misleading in any respect to reasonable consumers. Now, plaintiffs' claims obviously do not arise under federal law, they arise under state law. And in particular, the state law false advertising prohibitions that bar any advertising claim on a food label that has any capacity, tendency, or likelihood to mislead reasonable consumers. And that, of course, brings us to the preemption issue in this case, which is the primary issue that the course must address. Now, the NLEA preempts state law, or doesn't preempt state law, if state law imposes a food labeling requirement that is identical to the federal food labeling regulations. So here, the question is, can the court interpret the following two requirements as somehow non-identical? The federal bar on quantitative nutrient advertising claims that are, quote, misleading in any respect, and the state bar on quantitative nutrient advertising claims that have any capacity, tendency, or likelihood to mislead. One of the requirements for a nutrient content claim is that it not be false and misleading, right? That's the hook for your claim, right? False or misleading in any respect. In any respect. So the question I have relates to this section 101.130. Sure. The provision that says that compliance with requirements for nutrient content claims in this section and the regulations will be determined using the analytical methodology prescribed for determining compliance with nutrition labeling. It seems that the nitrogen method is such an analytical methodology. So why wasn't it permissible to do that based on O? Well, Your Honor, there's at least two things that I would like to mention with respect to 101.130. First off is that the court can't interpret section 101.130 in a way that conflicts with another provision of the regulations, which here we're going to bring the court's attention to 101.13C. And as this court has already interpreted that provision in the binding decisions of Reed and Hawkins, 101.13C means that simply satisfying the requirements of section 101.9 is not sufficient to authorize a claim as a nutrient content claim under 101.13I3, at least under the misleading in any respect prong of 101.13I3. So another way of conceiving of section 101.130 is that 101.13I3 has these two prongs, right? False or misleading in any respect. And if you have a claim that is calculated correctly according to the analytical methodology prescribed for determining compliance with section 101.9, that may tell you and likely does tell you whether or not the claim is false, right? So if the defendants here had said 30 grams protein, you could run the nitrogen method and say, oh wait, this only says 16 grams protein. That claim is false. But if you run it, if they claim 16 grams protein, you run the nitrogen method and it says 16 grams protein, that tells you that the claim is true. But it doesn't tell you whether it's false or misleading in any respect, right? Because those two separate provisions of section 101.13I3 have to mean different things. Otherwise, why say misleading in any respect in the first instance, right? So if falsity is determined by whether or not the claim is calculated correctly, whether a claim is misleading in any respect has to be based on something else. And that's a fact determination that you have to make in the context of the claim and the product on which it is made. And that also goes into the FDA explained when it was adopting the term misleading that it was adopting the FTC's definition of what misleading is. And going back decades, the FTC has always explained that even truthful claims can be misleading to reasonable consumers, right? So falsity and misleading in any respect have to mean different things. And even if section 101.130 can inform how to determine whether a claim is false, it doesn't answer the question of whether it's misleading in any respect to reasonable consumers, which is necessarily a fact question. I know there's a dispute among you about to what extent we can consider what the FDA has said. But if we are going there, it does seem that the other side has some fairly persuasive points based on some of this guidance saying you can use either of the methods in the regulation. And one of those methods is the nitrogen method. Well, Your Honor, if we're going to go to the FDA guidance, which, again, I don't think that the Supreme Court's rule under the Kaiser v. Willte case says that the first step in any regulatory analysis is to say, well, what has the FDA said on its website? The Supreme Court has said the first step of the analysis is, what does the regulation actually say? And if it's not ambiguous, that's what controls. And here, the plain text of 101.13 I-3 says misleading in any respect. And the court has to give effect to that phrase in its entirety. But as for the actual FDA guidance, if that's where we're going to go, it's important to look at what question was the FDA addressing? Because they weren't addressing the question in this case. The question here is, can you use protein quantity to advertise products when half of that quantity is useless to human beings? They were not asked that question. They were asked, what methods do you use to calculate a quantitative protein claim? Built into that question is the assumption that the claim is authorized to appear because it is not misleading in the first place. There is nothing within the FDA's answer on the webpage or in any of the various e-mails that the defendant has appended to its supplemental excerpt of record that addressed the question at issue in this case. They all look at the question from the perspective of calculation. But plaintiff's claim here is not about calculation. It's about authorization. And if the claim is misleading, in some respect, as we've alleged it is here, it doesn't matter whether it's calculated correctly because, again, if it's calculated correctly, it may not be false. But that does not answer the question of whether it's misleading in any respect under I-3. I guess I'd still go back to O, though. I'm not sure I'm following your argument as to why that doesn't allow a manufacturer to essentially have a safe harbor if they've used under either the false or misleading because it says compliance with the requirements for nutrient content claims. Well, one of the requirements for nutrient content claims is that it not be false. Another requirement is that it not be misleading, as you pointed out. And so it seems that just by the plain language of this, if someone's using the analytical methodology, they have satisfied the requirements, plural. Well, I disagree with that, Your Honor, because you still have to give effect to both provisions of 101.1 through I-3, which is false or misleading. And if you use the same standard to govern whether something is false or whether it's misleading, then you're collapsing them into one. And you cannot interpret the false or misleading in any respect in the conjunctive because there's an or that separates them. The FDA is very clear, false or misleading in any respect. But, counsel, the front-label claim is authorized, right? They can make the front-label claim, correct? Can they make the front-label claim? In this instance, they are not authorized to make the front-label claim because, as we've alleged, it is misleading in at least one respect. Wait, wait, wait. That's a different conclusion. Why can't — why is it it was incorrect for the district court to decide that the regs authorize the front-label claim of protein? But if you make that claim, you have to include the — in the NFP on the back, you have to include the adjusted, you know, additional information that would allow a consumer to understand that this is a low-quality protein. Why was he wrong? Well, Your Honor, there's — Because he's essentially saying it's not misleading as long as you've got that additional information on the back. There's no way to interpret Section 101.9c7, Roman numeral little 1, the DV regulation, as modifying the phrase misleading in any respect. Right? That phrase still means what it means. And its plain terms are very broad, misleading in any respect. And critically — But the defendant's point is that it's not misleading once you have the full — full-er information on the back label. Because if it weren't for the front-label claim, they could make the nitrogen-based calculation and put it on the back NFP and they'd be done. And I think you'd agree that that would be permissible. In fact, that's what you want. Doing that in the — That's what you want. In the Nutrition Facts Panel, it would be permissible. Correct. Right. Okay. So then my next premise is I think the regulations permit a front-label claim, right, about a quantitative amount of protein. A quantitative front-label claim, if it's not misleading in any respect. Okay. So then the question becomes, if I understand Your Honor's question, does the presence of the DV on the back allow us to determine, as a matter of law, that the front-label claim, even though half of the quantity is useless to humans — Right. — is not misleading? And the answer to that is no. It doesn't allow us to determine that as a matter of regulatory interpretation. And there's a few reasons why. First, in the Asiana v. Haines Celestial case, the court determined that compliance with back-label disclosures, even if they might put the front-label claim in context, is not sufficient to say that a claim that the front-label is misleading is preempted as a matter of law. So that's the principle that really originated with the Williams v. Gerber case, right, that the FDA— But Gerber's really different, counsel. You come back to Gerber in your reply brief, but Gerber didn't have a preemption issue. No, but Asiana did. But that was state law, right? So you argued Gerber in your reply brief. And I don't see — so if we could take it one at a time. Sure. I don't see how Gerber helps you here. What am I missing? So the Gerber rule was imported into the preemption analysis in the Asiana v. Haines case because in that case the defendant was saying on our cosmetics product— Could you slow down a little? Sorry. That's okay. So you're relying on Asiana. Correct. Okay. Asiana imports the Williams rule into the preemption analysis and says compliance with these back-label disclosure requirements, even if they might put the all-natural claim into context, doesn't mean that it preempts a claim that that is misleading under state law. And that's because, again, importing the rule from Williams into the preemption context, the FDA doesn't require disclosures on the back as a shield for liability for a claim that is misleading on the front. So that's the first principle of law. The second is that there's nothing within— Counsel, it would really help me if you would slow down. I'm sorry. When I get excited and— Well, I appreciate your advocacy. Time's limited, I know. So the second reason is that there's nothing within the text of section 101.9c7.1 that allows the Court to say, as a matter of law, providing the percent DV remedies what we have alleged here, the respect under 101.13i3 in which we have alleged that the claim is misleading here. And even the Roush case acknowledges that, right? The Roush case, the defendant said, well, the percent DV doesn't tell you that half of the protein quantity is useless. And Judge Chabria, the same judge that issued in Ocarina, said, yeah, that's probably true. But the theory of deception in that case was different. It was about— Well, it was different, right? But there wasn't the allegation about the—there was the allegation there that the back label disclosure wasn't—I'll call it a disclosure—wasn't included in that. We don't have that claim here. That's correct. But the theory of deception as to how the omission of the percent DV was misleading is different than the theory of deception here as to how the front label claim is misleading. I understand. And there's nothing—so, in particular, what's—the DV requirement, this is the critical point, triggers off of any protein claim, right? And not just the way the protein claims and the way that we've alleged it's misleading here, right? So if you have a quantitative protein claim, even on a product that is 100 percent digestible, plaintiffs would say, here, that's not misleading in any respect. You still have to provide a percent DV. And the omission of that percent DV could still be misleading under the theory in the Roush case. So there's nothing within the text of 101.9c7.1 that allows the Court to say, aha, putting the percent DV here relates to quantitative claims under Section 101.13I3 and allows us to determine, as a matter of law, that the percent DV does, in fact, cure what's misleading here. Because, again, in FDA guidance that the defendant submitted in the Supplemental Excerpt of Record, the FDA acknowledges that when you have these front label quantitative claims, people aren't even often looking at the Nutrition Facts panel, right? So whether or not the quantitative claim here is misleading in the respect that we've alleged to reasonable consumers under 101.13I3 is a fact question. It is not a preemption question. If it does, in fact, mislead, the claim is prohibited under identical federal and state standards. If the percent DV does, in fact, cure what we've alleged is misleading, then the claim fails, but it fails under identical federal and state standards. So, again, it's not a preemption question. It's a fact question. You're down to about six minutes. Do you want to reserve? I'll reserve my time unless the panel has any additional questions for me. Thank you. Thank you. Good morning, and may it please the Court. As the District Court correctly held, the plaintiff's state law claims are preempted by federal law. The FDA's regulations permit a manufacturer to calculate quantity of protein on the front panel by reference to the approved nitrogen method. 101.13I3 permits a manufacturer to include an amount or a percentage on the front label if it doesn't implicitly categorize or characterize the level of nutrient in it, and it is not false or misleading, as the plaintiffs note. So his point is that is an implicit representation, that your body will receive, you know, we'll say 13 grams of protein. As I understand it, that actually is not their claim. They've never claimed that it implicitly characterizes the level of nutrient. They've always claimed that it's false or misleading because it is, in fact, Now, that's his misleading point. Yes. So there's two parts of I3. One is that it doesn't implicitly characterize the level of the nutrient. This is an express claim, and so it doesn't implicitly characterize the level of nutrient. It includes a quantitative amount of protein, and then it's not also false or misleading. So the examples that the FDA gave in I3 I think are illustrative. So as an example of an express claim that's not false or misleading, it provided, as examples, 5 grams of fat or 100 calories. So not all calories are equally nutritious, not all calories are even digestible, and not all fat is the same. But the FDA reflected that it viewed this provision as authorizing those purely quantitative claims on the front of the label totally agnostic to a quality determination. The guardrails for including a quantity claim are then, as Judge Bress noted, provided by 101.13.0. He referred to it as a safe harbor. I think it provides the analysis for when you can import quantity claims and the circumstances under which that's authorized. If you use the analytical methodology from the Nutrition Facts Panel, as set forth in 101.9, you comply with the regulation. Have you ever called it a safe harbor? You're making me all nervous about calling it a safe harbor. Yeah, I would say we think of it as providing the standards under which a manufacturer complies with the regulation. I think the reference to a safe harbor was simply, as I understand it, was meant to say the misleading prong of I3 doesn't essentially serve as an overarching requirement for all labeling, regardless of whether the FDA has authorized it. That can't be the rule. There's an express preemption provision in the regulations to give meaning to that. You can't import state law misleading standards as a qualification on basically any standard that a manufacturer has adopted in compliance with the FDA's requirement. I think this is confirmed by 101.9 C7I, which sets forth a framework by which to analyze protein quantity versus quality. So it reflects a policy judgment by the FDA as to how to reflect the difference between actual amount of protein, which is calculated using the nitrogen method, and then, on the other hand, information about digestibility. And it specifies the when, where, and how digestibility information is to be included. The when is when you make a front label quantitatively. Or really anything outside the NFP, right? This was a front label claim. But isn't it triggered if there's any representation outside the NFP? Yes, although what I was referring to is the protein-specific provisions in C7I, which really distinguish between quantity and quality of protein. And I think that the language that the FDA used in that provision, which is that you have to include corrected amount of protein on the back label in the form of a percentage of daily value, reflects that the FDA contemplated that the front label claim would be an uncorrected amount. I know, but what I'm trying to get at is you keep saying front label claim. And I think that what we're talking about is triggered. This other disclosure provision is triggered any time there's a representation of protein quantity outside the NFP. Yes, I'm sorry. That's okay. I did not understand that question, but you're certainly right. It would be any time outside the NFP, including on the front label. And, you know, as I was noting, C7I reflects the where, when, and how that digestibility information is reflected. And the when is when you make that claim outside the NFP. The where is the digestibility information that appears in the NFP itself. And the how is as a percentage of daily value. And as the FDA explained in its recent guidance, which we urge this court to take account of as persuasive authority, because we believe that the regulations are unambiguous. But if this court has doubts about how these regulations play here, including the role of O, subprovision O, then this FDA guidance certainly answers the question that the plaintiffs pose. It authorizes explicitly a manufacturer to calculate that front label nitrogen claim by reference to either, I'm sorry, that front label protein claim, either by reference to nitrogen values or amino acid values and remedies any ambiguity that may exist in this case. Could I ask you a question about your supplemental brief? Yes, of course, Your Honor. Thank you. You said that the district court held that it, quote, it may be misleading for a manufacturer to advertise protein quantity outside the nutrition facts panel if it does not also state the corrected amount of protein expressed as a percentage daily value in the NFP. But, of course, that's not what the district court said. I think what the district court actually said is that it is misleading to advertise protein quantity without also stating the corrected amount on the back label. And all of that depends, really, which strikes me as also not quite right. I know this is splitting hairs, but that presupposes that the court's restatement of the rule presupposes that we're talking about a protein quantity that is a quality that is poor. Isn't that right? So let me take the first part of your question first, if I may. I understand the district court's analysis to be in the context of preemption that there would be no preemption under the district court's reasoning if that percentage of daily value wasn't included. And as in terms of whether it would be misleading as a matter of law, I understood the district court to characterize that as an issue of fact, so the case will proceed to a factual determination of whether it's misleading under the circumstances. But there wouldn't be preemption as a matter of law because that would not be available without the percentage of daily value. Do you agree with the premise that the court said it is misleading to advertise, but a more precise way to formulate that is that it may be misleading, depending upon the quality of the protein? I think it depends on a number of factors, including all the things that go into whether something is misleading, materiality, reliance, perhaps percentage of protein. But under the district court's rationale, there wouldn't be preemption. Right, right, right. We're saying the same thing, I think. Yes. All right. Thank you. The plaintiff's position ultimately, I think, is that misleading, as I said, should serve this kind of blanket role over all claims, regardless of how specifically the FDA has otherwise authorized those claims. And that simply can't be the rule. It wouldn't give any value to the express preemption clause that exists in the NLEA. And it would be no different than the plaintiffs, for example, taking issue with the thresholds that the FDA has set for characterizations. Like, for example, you can make a low-sodium claim if a product has less than 140 milligrams of sodium. Plaintiffs may disagree with that rule. They may say that is misleading because the science shows that it should be 100 milligrams, for example. But this is not the proper forum in which to raise that type of claim. Can I ask, just hypothetically, if we did not have the O regulation, would there still be preemption here? I think that there probably would be, because of how specific the FDA regulated in terms of the location and the substance of quality versus quantity of protein. But, of course, we do have O, and it serves a valuable role in creating that explicit cross-reference, kind of merging the standards in the context of protein specifically. And was O part of Reed and those decisions about trans fat? So O is not mentioned in Reed or Hawkins. And I went back and looked at the briefs in those cases, and it also did not play a role in the briefing in that case. I think one of the reasons why is because it was agreed that those claims were false, just factually false. Actually false. Actually false. And they weren't quantity claims either. The claims there were about the absence of a quantity of nutrient, and so it's a little bit different than just transporting the figures from the back of the label. And in the context of including NFP claim, quantity claims on the front label, the FDA has really focused on and urged consistency, including in the 2009 guidance that we cite on page 31 of our brief, which makes it very different from the situation in Reed and Hawkins. I'd also just point out while we're on the subject of those cases that the FDA guidance in those cases was exactly the opposite of what the guidance was here. So there were two letters from the FDA at issue that the court in Reed talked about that said that no trans fat on the front of the labels there was an unauthorized nutrient content claim. And this court gave weight to that. It said that we defer to the FDA even if it's the product of an informal process. And, of course, the FDA guidance here is exactly the opposite. That informal process resulted in the FDA saying on its website for everyone to see that there are two ways to validly calculate front label protein claims, one of which is the nitrogen method that the defendant manufacturers use in this case. Can I circle back to the misrepresentation theory of plainness for a minute? Because I asked opposing counsel about his invocation of Gerber baby, the Williams case in his reply brief, and I think he's conceded that it doesn't help on the preemption question because the preemption wasn't an issue in that case. But he pivoted to Astiana. Do you want to respond to that? I think Astiana actually shows the court where misleading comes into play most significantly. Astiana involved a representation as to a natural product, a claim on the front label that it was pure natural, something along those lines. And in that situation, because the FDA had not spoken to the circumstances under which that claim could be made, misleading played a role. Like where the FDA has not spoken and there are gaps in the regulation, it is subject to the limitation that those claims cannot be false or misleading. By contrast, here we have an explicit quantity claim that is approved by the FDA, and under those circumstances manufacturers certainly should be able to rely upon the FDA guidance and the FDA's interpretation of its own guidance in compliance with the regulations. Thank you. If there are no further questions from the panel, we ask that you affirm the district court's judgment. Thank you, counsel. Just a few things. First, on this issue of whether the FDA has spoken. And they said, you know, the FDA, that Astiana comes into play where the FDA hasn't spoken. The FDA has spoken here. They promulgated 21 CFR section 101.13I3, pursuant to the notice and comment procedures of the APA, and that provision prohibits quantitative claims that are misleading in any respect. And I think that's important to keep in mind, because the defendants argued that plaintiff's interpretation here somehow nullifies the express preemption provision of the NLEA, which is incorrect because the only nutrient content claim regulation that turns on whether it is misleading in any respect to reasonable consumers is I3, right? So if they meet the requirements for making an excellent source of protein claim because they have more than 20 percent of the daily value of protein, no claim lies under plaintiff's theory that that could be misleading and therefore prohibited, because there is a specific regulation in subpart D that authorizes the claim. So it is incorrect to characterize this as somehow being at the whim of a general prohibition on misleading advertisement claims. It's not a general prohibition on misleading claims. It is a specific prohibition that the FDA put into the regulations about quantitative claims. And if we want to talk about FDA guidance, then I would encourage the Court to read the FDA guidance that the FDA put in the Federal Register as to why it promulgated 101.13I3 in the first place. It was not concerned with whether or not the claim was calculated correctly according to the procedures set forth in section 101.9. It was concerned with whether or not the quantitative claim would mislead consumers about the health and nutritional benefits of the product relative to the amount of the nutrient that is advertised and that they actually consume. And that is precisely the theory that plaintiffs allege is the manner in which, or I should say maybe the respect in which under 101.13I3 that the quantitative protein claim is misleading here, because reasonable consumers expect when they see a 16-gram quantity claim that they will receive the dietary and health benefits of the entire amount that they consume. And that's not true. And so that is the reason that the FDA promulgated a specific prohibition of quantitative claims that are misleading in any respect. And now I would like to get back to the percent DV requirement just to highlight a couple of things. Opposing counsel said that it triggers off of quantitative claims made elsewhere on the label. And that is not true. It is true, but it's more than that. 101.9C7I, again, says that you have to provide a DV if you make any protein claim, not just quantitative protein claims, right? So if you make an excellent source of protein claim, you have to put a percent DV in the back. You say high-end protein, you have to put a percent DV in the back. You say plant-based protein, you have to put a percent DV in the back. So trying to use that requirement to interpret whether a quantitative claim, specifically a quantitative claim, is misleading under 101.13I3 doesn't work, because the DV requirement is not tied or tethered specifically to quantitative claims. It's designed to provide consumers with information on how this fits into what the FDA recommends are the daily protein requirements, but it doesn't provide consumers with the information that will cure what we've said is misleading here, which is that consumers that look at the DV have no idea, oh, well, it says 16 grams of protein, but I'm only going to get the health and dietary benefits of 8 grams of protein. That's still true, regardless of whether the DV is on the back. And then as far as the other point on the percent DV requirement, is that the defense has said that that is the only way that the FDA has required them to provide statements to consumers about protein quality. And even if that's true, that has no effect on the preemption analysis, because plaintiffs are not seeking to require any different or additional protein quality disclosure. That's a different analysis. We're saying that the quantitative claim is misleading because of protein quality, because these proteins are so low quality that half of them are useless to humans, but that's not the same thing as saying, as a result, you must provide some additional information about protein quality on the front of the label. That's not the claim. And that's where several of the district courts went off the rails. So your claim continues to be that the remedy is that they need to take it off the front label. Correct. If the claim is misleading under Section 101.13i3, then it may not be made on the label under Section 101.13b. And there is nothing in Section 101.9c7.1, the DV requirement, that is contrary to that. So it is fully consistent with the DV requirement to say, if your quantitative claim is misleading, then you can't make it. So in the end, I would just like to stress, the plain text of the regulations, of each regulation that is issued here, is on plaintiff's side. The plain text of the NLEA's express preemption provision is on plaintiff's side. The only binding Ninth Circuit cases that interpret the regulations that are at issue here are on plaintiff's side. In the end, the preemption analysis is very simple. Can you interpret misleading in any respect under 101.13i3 as being not identical to the State law prohibition on advertising claims that have any capacity, tendency or likelihood to mislead? Plaintiffs submit that you can't interpret them as not identical, and therefore plaintiffs' claims are not preempted. Thank you. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted for decision and will be in recess. Thank you.
judges: THOMAS, CHRISTEN, BRESS